IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

JUN 2 3 2016

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| AMALGAMATED TRANSIT UNION, LOCAL 1091, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL METROPOLITAN TRANSIT AUTHORITY, TRAVIS TRANSIT MANAGEMENT, INC., and MCDONALD TRANSIT, INC. <br><br> Defendants. | No. 16-cv- <br><br> **A16CV0735 SS** |

## COMPLAINT

### Introduction

1. Local 1091 of the Amalgamated Transit Union (ATU) brings this action pursuant to 42 U.S.C. § 1983 to bar defendants Capital Metropolitan Transit Authority, McDonald Transit, Inc., and Travis Transit Management, Inc., from acting in concert and in violation of the First Amendment to prohibit members of Local 1091 from expressing their views or making statements of any kind to the media.

### Parties

2. Local 1091 is the sole and exclusive bargaining representative of all non-supervisory employees of Travis Transit Management, Inc.

3. Defendant Capital Metropolitan Transit Authority ("Capital Metro") is a rapid transit authority, a public political entity and a corporate body under Texas law.

4. Defendant McDonald Transit, Inc. is a private corporation that operates bus service under a contract with Capital Metro and pursuant to Texas Transp. Code § 451.056(a)(3).

1

5.    Defendant Travis Transit Management, Inc. (TTMI) is a subsidiary of McDonald Transit that operates bus service on behalf of Capital Metro pursuant to a contract and that took over the role of employer to Local 1091 members from McDonald Transit in 2013.

6.    Upon information and belief, McDonald Transit and TTMI maintain joint operations to some extent, including jointly operating Capital Metro bus services.

7.    For instance, John Wilson, who notified the plaintiff of the existence of the challenged policy in this case as described below, describes himself as the "Deputy General Manager of TTMI/McDonald Transit."

## Jurisdiction

8.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, namely the First Amendment and 42 U.S.C. § 1983.

9.    Venue is proper in the Western District of Texas under 28 U.S.C. § 1391 because the Defendant is located in this district and all the events and omissions giving rise to the claims occurred in this district.

## Facts

10.    On May 12, 2016, as part of a series of investigative reports on the safety of the bus transportation system operated by Capital Metro, KTBC-TV Fox News 7 in Austin broadcast a story describing physical attacks on bus operators.

11.    As part of the story, Oscar Nelson, a bus operator and Local 1091 member who was the victim of one such attack spoke to a reporter from KTBC-TV about the attack.

12.    The news story included comments from Mr. Nelson and another former bus operator that were critical of defendants' response to attacks on drivers.

13.    Mr. Nelson spoke with the news station when he was off-duty and gave no indication that he was speaking on behalf of the defendants.

14.    Fox News did not identify Nelson by name or show his face on camera.

15.    After the story aired, Capital Metro contacted John Wilson, Deputy General Manager of TTMI/McDonald Transit, to express concern about Nelson's comments to the press and to instruct TTMI to "remind [its] employees that making statements to the media violates policy."

16.    On May 16, 2016 Mr. John Wilson called Nelson into Wilson's office.

17.    Wilson had identified Nelson as the person speaking in the news story based on his voice and the description of the attack that he suffered.

18.    Wilson stated that Nelson could not talk to the news media under a "Media Relations Policy" purportedly issued by Capital Metro in 2009 and instructed him not to speak with news media in the future.

19.    Nelson had never seen the "Media Relations Policy" and knew of no rule prohibiting him from answering questions by the news media.

20.    On May 17, 2016, Wilson called Brent Payne, Vice President of Local 1091, into his office. Wilson informed Payne that he had spoken with Nelson the day before and that Nelson would likely be contacting the union as a result of that meeting.

21.    Wilson then gave Payne a copy of the so-called "Media Relations Policy," a copy of which is attached hereto as Exhibit A.

22.    Payne questioned Wilson about the propriety of any discipline that TTMI might impose on Local 1091 members for speaking to the press and Wilson responded by stating that it was Capital Metro's policy and TTMI had no discretion regarding enforcement of the policy.

3

23.     Neither Payne nor any other officer of ATU Local 1091 had ever seen the "Media Relations Policy" or had any knowledge of its existence.

24.     Wilson informed Nelson and Payne about the policy at the behest of Capital Metro after Capital Metro expressed concern about the May 12 news story.

25.     The "Media Relations Policy" of Capital Metro prohibits "all Capital Metro employees and all employees of all contracted service providers," including TTMI bus operators, from engaging in any speech or communication of any kind with any person who represents the press or media.

26.     The policy states in part:

> As a public agency, Capital Metro receives considerable attention from the news media. Many citizens form opinions about Capital Metro based on the news media's portrayal of our functions....
>
> POLICY
>
> The release of all information to the news media will be coordinated by the Communications Department.
>
> Employees who are contacted directly by the news media shall not respond to questions or discuss Capital Metro business without the permission of the Communications Manager or his/her designee.
>
> Upon receiving a media inquiry, employees are required to:
>
> o   Refer the media to the Communications Manager or a Communications Specialist.
>
> o   Contact the Communications Manager or a Communications Specialist to advise them of the inquiry....
>
> Employees will cooperate fully in meeting the relevant needs of the news media under the guidance or by request of the Communications Department. The Communication Manager or a Communications Specialist shall be present for all media interviews whenever possible.

27.     Local officers have from time to time spoken to reporters about collective bargaining issues and other matters of public concern.

4

28.     Local 1091 and its members have an interest in being able to speak publicly about matters of public concern, including the safety of bus operators and the Capital Metro bus system.

29.     While Local 1091 disputes the validity of the Media Relations Policy, its collective bargaining agreement with TTMI gives TTMI discretion to implement and enforce policies with discipline up to and including discharge.

30.     Local 1091 members therefore face the prospect of discipline by TTMI if they do not abide by the Media Relations Policy.

**Count I**
**Section 1983: Violation of the First Amendment**

31.     By the acts set forth above, and in violation of 42 U.S.C. § 1983, and by a blanket prohibition of any and all speech with the "news media," without exception and under any and all circumstances, including responses to questions from the news media about the personal safety of bus operators, the defendant Capital Metro has denied the rights of Local 1091 members under the First Amendment.

WHEREFORE plaintiff respectfully prays this Court to:

A. Enter judgment in favor of Plaintiff and against Defendants;

B. Declare that Plaintiff and its members and representatives may speak with the press upon matters of public concern;

C. Preliminarily and permanently enjoin Defendants from prohibiting Plaintiff and its members and representatives from speaking with the news media upon matters of public concern;

D. Order Defendants to rescind or amend the "Media Relations Policy" so as to conform with the injunction and distribute notice of this rescission or amendment to Local 1091 and its members; and

E. Grant Plaintiff's attorneys their fees and costs.

Dated: June 22, 2016

By:_____
One of Plaintiff's Attorneys

Sean Morales-Doyle
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
Ph: (312) 372-2511
Fax: (312) 372-7391
smoralesdoyle@dsgchicago.com
Illinois Bar Number 6293421

6